To what extent we're familiar with your cases. I know all of you are familiar with our lighting system, and you now have a readout on your side of the podium that tells you how much time you have left. And I remind you that rebuttal is for rebuttal only. And we call the first case U.S. v. Theall, and we hear first from Mr. Talbot. May it please the court. Dustin Talbot for the appellant, Thad Theall. At issue in this appeal is whether the district court exceeded the scope of this court's mandate when the district court held a new evidentiary hearing on remand, whether the district court applied the incorrect burden of proof for restitution at that hearing, and whether the district court abused its discretion in ordering Mr. Theall to pay an additional $32,000 in restitution. Mr. Theall was convicted of two counts of bankruptcy fraud for failing to disclose in bankruptcy filings and proceedings that he sold a personally owned building four months prior to the filing of his bankruptcy petition. And on the date of that filing, he still possessed a $15,000 promissory note related to that sale. Had Mr. Theall properly disclosed the building sale in his bankruptcy proceedings, the $15,000 promissory note would have been negotiated by the trustee and its proceeds disbursed to the creditors. On direct appeal, a panel of this court affirmed Mr. Theall's conviction and the $15,000 order of restitution, but vacated the remaining restitution and remanded for a recalculation of the amount of loss. May I ask, is it your contention, counsel, that merely having the hearing was itself going beyond what the mandate authorized? No, Your Honor. The contention is that accepting new evidence in the form of the trustee's testimony. So I think certainly the judge could have perhaps had like oral argument where the bankruptcy law was debated among counsel to the judge to help the judge make the bankruptcy law determination of whether this transfer could have been avoided. The oral argument was since the evidence was essentially the bankruptcy court giving the judge a lecture on bankruptcy law, is it materially different from having oral argument? I think it is because in this case it wasn't just that the trustee said this is how bankruptcy law works. This trustee was the same trustee from this bankruptcy case, and she said, had I known about this $32,000 transfer, this is what I would have done as the trustee. And I think that's testimony of new facts, facts that certainly were not in the record prior to the remand. It was relevant to the question the judge had to decide, though, wasn't it? Well, the question the judge had to decide is under bankruptcy law, could that $32,000 have been avoided? And I think that question could have been answered just by applying the bankruptcy law to the facts in the record. And that's what I think this court intended for the court to do was to re- We sent it back for recalculation. That's not a math error. That allows the judge to take into consideration additional evidence, additional information, additional data. So I don't think your position is solid with respect to just redoing what they had done before. What do you think the recalculation was supposed to be comprised of? Well, I think when the panel said the word recalculate, if we look at the context of why this was remanded, at the original sentencing when the government proposed the additional $32,000 in restitution, the defendant objected and said bankruptcy law doesn't allow that money to be avoided. And in response to that objection, the district court refused to apply bankruptcy law at the original sentencing. And that was the error that the panel of this court identified and said the district court erred not in accepting more evidence. It erred in not applying bankruptcy law. And so I think in that context of why the case was remanded because the court refused to apply bankruptcy law, the recalculation was recalculate the restitution actually applying the law that we're telling you you should have applied. I think we have your argument on that. Thank you, Judge. The other reason why the district court was outside the scope of the mandate is that the government had ample opportunity at both the original trial and the original sentencing to place into evidence any evidence that it wanted to support this additional restitution. The government was on notice prior to the original sentencing that the defendant objected to the $32,000 in restitution. Yet despite being on notice, the government failed to call the trustee at the original sentencing. And when asked by the government if they had anything to add to the argument, they declined to be heard. Doesn't the district court reach the opposite conclusion that it was the reason the government didn't introduce evidence about whether the transfer was avoidable earlier because the court had determined, had already ruled that that wasn't required? Well, I think the district court's statements there are not supported by the record at the original sentencing. Because before the district court makes the ruling that it won't apply bankruptcy law and that it's going to impose additional restitution, the government was never prevented from entering that additional evidence. The government was asked if it'd like to be heard on the issue, and the government said no. So I certainly think the government had every ample opportunity to introduce that evidence into the record, and it chose not to, perhaps because the government thought it was going to win the issue. But either way, it's the government that is the proponent of this additional restitution, so it's the government's burden to put some evidence into the record that supports the restitution. And that didn't happen in this case. And so this case, that fact, the fact that the government was on notice at the original proceedings and did not introduce any evidence is what makes this case different than almost all of the mandate rule cases from this circuit. The fact that in this case the government refused to put evidence in the record, even though it was on notice, and then on remand was given an additional opportunity to introduce that evidence, is different than, say, the Corrales-Villalta case. And it's different than the Lee case, where on remand the district court only looks at facts that were already in the record. In the Lee case, that was a judicial confession. In the Corrales-Villalta case, it was the government had made the same proposition at the original sentencing, and it was simply reentering the proposition at the resentencing. So everything was supported by what was already in the record. So the case most analogous to this situation is this court's unpublished decision in United States v. Bowerman, which, while not precedent, its analysis is persuasive in this case. In the Bowerman decision, the defendant objected to a firearm possession enhancement at the district court. And over that objection, the district court imposed the firearm enhancement, even though the government provided no evidence to support the enhancement. And the direct appeal panel of this court reversed the firearm enhancement and remanded the case back. And on remand, the government finally introduced into the record evidence to support the enhancement. On appeal of the second appeal of the remand, this court said that we're going to reverse the sentencing enhancement again because neither in the court's opinion nor in its mandate did it direct additional fact-finding on the issue, and because the government failed to offer any explanation for why this evidence could not have been presented prior to the remand. And that's the case in the case before you, Your Honors. The persuasive reasoning of the Bowerman opinion should be applied in this case. The Bowerman approach of holding the government's feet to the fire is equitable in this case because the government, over the objection of the defendant throughout the entire process, refused to introduce this evidence in the record. And it should be held to that burden and not given a second bite at the apple. But five years later, there was a published opinion in Corrales-Vellante that said you can generally have an evidentiary hearing absent specific instructions to the contrary. So honestly, how you can rely on Bowerman, which was unpublished, and preceded the other case by five years? Well, I think the difference is the Corrales-Vellante case involves a case without specific instructions. And our argument before the Court here is that this mandate was specific and that it ordered a recalculation. It did not tell the judge how to do that or that it can't hear additional material, relevant material, that would aid its recalculation, does it? I don't think so under this case because the error that was identified was not that the district court made a factual error. It was that it made a legal error in failing to apply bankruptcy law. I think that was the error that was meant to be corrected on remand. The district court also applied the incorrect burden of proof on remand by failing to require the government to prove that the estate would have ultimately received an additional $32,000 if Mr. Thayil had made the proper disclosures in bankruptcy. What's the flaw in the government's proof? So the flaw in this case is once the government proved step one of restitution, that the bankruptcy law would have allowed the trustee to avoid the transfer, the government should have also been required to prove step two of restitution, that the trustee would have ultimately prevailed in the avoidance action and would have recovered the money for the estate. What's the flaw in the government's case in proving that it could have clawed the money back? So what the trustee testifies on remand is that she would have pursued this avoidance action. She would have hired a lawyer to pursue this separate civil lawsuit and that she was reasonably certain she would be successful. But on the gentleness of prodding on what evidence would be put on those in that lawsuit, what evidence perhaps existed that Mr. Thayil had actual intent to defraud in February of 2005 when the $32,000 transfer was made, the trustee said I don't have that evidence. I don't have the evidence to put on that case today. So the judge and the district court judge on remand specifically said that that was enough. It's enough just that the government says we would have tried to get the money back and we think we might have got it. Instead, the trustee— A little bit more than that. I could have gotten a judgment is what she says. And that's her speculation that she would have gotten a judgment, but she refused to provide any backup for that. She refused to provide any evidence as to how she would have established any of the elements of 548 for a fraudulent transfer or any of the elements of 547 for an insider transfer. And I think the confusion in this issue with the district court judge is that bankruptcy law and criminal restitution law provide different burdens of proof. What is your best case for the proposition that the bankruptcy trustee had to, at a minimum, identify the specific proof she would have relied on and had that evidence identifiable at hand in order to meet the burden required here? Your Honor, this conflict of bankruptcy avoidance law and restitution has not been before this court or any other federal court. But not necessarily this case. What is your best authority for arguing that whatever the quantum of proof here was, it was inadequate? So the best authority, if I understand your question correctly, you're asking what authority says the restitution burden of proof should apply versus the bankruptcy burden of proof? No, what I'm asking – it's a little more general. What is your best case for your argument that this proof in this record did not make it? Well, I think – I wouldn't say that there's a best case because this sort of situation has not come up before, Your Honor. Do you have any authority to support your argument? The authority to support this argument is that in this case, the trustee would have been required by the bankruptcy statutes to prove either the elements of a fraudulent transfer under 548 or the elements of an insider transfer under 547. What is your best case to support the argument that that standard applies here? That's the standard that was dictated by the panel in the remand. The panel in remand says in this case that the district court necessarily had to determine whether bankruptcy law would have allowed the trustee to avoid the transfer and recover money for the estate. And I guess I'm asking what is your best authority for the level – for the quantum of proof required to make that showing in this procedural context? It would be 3663E, the restitution statute that places the burden approved by a preponderance of the evidence on the government to establish restitution. And admittedly, the government met that burden on step one of restitution, that the trustee would have attempted to avoid the transfer. But they were never required to meet the burden of step two, that the transfer would have actually been avoided and the money would have actually been recovered into the estate. Are you familiar with the Schonbaum case? I am, Your Honor. Because in that case, we affirmed a restitution in a bankruptcy fraud case based on an affidavit from somebody from the U.S. trustee's office. And the affidavit said that had she known there was no legitimate business justification for the debtor receiving a certain sum of money, she would have sought the appointment of a trustee who could have sued to recover the entire amount paid to the insiders pursuant to 547 of the bankruptcy code. I think maybe they had a little more proof than that in this case. I would respectfully disagree, Judge Davis. I mean I think in this case this trustee showed up at the hearing and stated on the record I have not reviewed any of the documents. I haven't reviewed the petition. I can't say how I would prove the case that this was a fraudulent transfer. I can't say why Mr. Thao had fraudulent intent to conceal this $32,000 transfer. Couldn't the district court look at the record like we can and see what the evidence is that would likely support it? Absolutely, Your Honor. I certainly think anything in the – Is there any case that says she has to articulate each step in the process? She being the district judge or the trustee? District judge, yeah. Well, I mean I think she – the district judge articulated her understanding of this, I think, pretty well, that the government only had to prove the first step of restitution but not the second that the money would actually be recovered. Yeah, that's a different question than whether she had to articulate each step in the process of getting the judgment. Right. Well, and I mean – And I think we're at sort of a second out of three steps. One is could she have brought an avoidance action? The second is could she have gotten a judgment? The third is could she have collected? I thought we were on step two. Right. And in no way has Mr. Thao ever contested collectability. I think if the judgment is achieved against Mr. Thao, that's enough for restitution. It's not about collectability. The question is could that judgment have ever been achieved because there are many statutory defenses to this action and the fact that there's never been any evidence in the record that there was actual intent to defraud with the $32,000, and that should have been the government's burden to establish that. Okay. May it please the Court. I'm Camille Domingue, representing the United States, who's the appellee in this case. I'll begin, as defense counsel did, by talking about the mandate issue, the scope of this court's mandate in FAIL I and whether the district court had the authority to conduct a hearing, which I think counsel has conceded the hearing is not the problem. It was the receiving of the new evidence. Now, the district court looked at this sort of in an alternative way. First, that this was not really new evidence because, Judge Rosenthal, as you pointed out, basically the trustee was explaining to the district court how bankruptcy law works. And in FAIL I, the district court had found, incorrectly as this court found, that the court didn't need to decide how bankruptcy law would be applied in this case, just that the trustee was deprived of the opportunity to consider whether an avoidance action should be pursued. Of course, that was not correct. The district court said, well, you know, now I'm not an expert in bankruptcy law, but the trustee can explain this. And so the district court's first rationale was this is not new evidence. The second rationale, and at one point when counsel was making the objection to that ruling, he pointed out, well, Judge, you know, it is kind of new evidence because the trustee is testifying as to what she would do. And the district court said, well, you know, I'm not going to disagree with that. So the second rationale would then be that assuming it is new evidence, this circuit's law on receiving new evidence on remand would permit it. And this is basically Corrales-Villada, where this court held that although the court can limit what the district court can do, it certainly has that authority, if it doesn't, then the district court can receive whatever evidence is necessary to address the narrow issue on remand. We're not going to have a whole, full-blown, brand-new sentencing hearing on all kinds of other things, but we're going to receive new evidence if there's no limitation in the mandate on the narrow issue presented on remand. I take it you don't view the word recalculate or the identification of the failure to identify how bankruptcy law would support an avoidance action as precluding this kind of evidence. Oh, absolutely not, Judge. This was within the scope. The district court had to figure out how do we apply bankruptcy law, what does bankruptcy law say about whether this transaction can be avoided, and, you know, as the district court ultimately conceded, what would the trustee have done if she would have known about this undisclosed $32,000? And so this is evidence that the district court needed. The government did not try to identify additional transfers, oh, we've got this additional $50,000 or this $60,000 transfer. We're talking about the same $32,000 transfer that was talked about at the district court. And just one small point of clarification, if you read the district court transcripts, we talk about it in terms of $35,000. That was either an error or some misunderstanding, but we're really talking about a $32,000 transfer. So in terms of the mandate rule, this is governed by Corrales-Villarta. Bowerman, an unpublished case, Judge Clement, as you pointed out, to the extent that Bowerman is inconsistent with Corrales, it's overruled. I think that this case is distinguishable from Bowerman because the government provided an explanation as to why it didn't introduce this evidence at the initial hearing. And that's because the district court very clearly telegraphed to the government early on that it did not think it needed to reach the issue of how to apply bankruptcy law. Before we even got to the first sentencing hearing, if you look at Record on Appeal 1652, there was a pre-sentencing hearing conference on November the 1st of 2011. And at that particular page, the district court tells the lawyers, before we even get to the first sentencing hearing, I don't think I need to decide how bankruptcy law works in this case. Bankruptcy law is about preserving the process. This defendant violated that process when he failed to disclose the $32,000 transfer. I don't need to go any farther than that. So before we even get to the sentencing hearing, the district court telegraphs to the government lawyers, we're not going to go there. And then by the time we get to the sentencing hearing, at a very early stage, look at ROA 1704 through 1706, page 11 of a 150-page sentencing transcript, the district court starts talking about, I don't need to apply bankruptcy law. It's enough that I find the trustee was denied the opportunity. So this is different from Bowerman because the government had a good reason not to put on the evidence the first time. The district court said, I don't need it, I'm not going to consider it. So that's the mandate rule issue. Now, moving on to the question of burden of proof. What the district court basically found in this case was that it was enough for the government, the government would carry its burden under the restitution statutes, 3663 and 3664, if the government proved that the trustee, as a matter of law, could pursue an avoidance action, and that that avoidance action would be successful. What everyone seemed to be arguing about at the resentencing hearing was the issue of collectability. And the trustee quite clearly testified that if I had known about this, I would pursue an action. Another thing I want to clarify, the defendant in his brief spends a lot of time talking about 547. Everyone agreed at the hearing itself that we were only going to talk about 548. The trustee felt that she could sustain an avoidance action under 548. There are no defenses, according to the testimony of the trustee, to a 548 avoidance action. What are the steps that the trustee would have to go through under 548 to get a judgment? The trustee testified that she would, one, that she doesn't have the resources to pursue that kind of lawsuit. So she would find a lawyer who would do it. And the defendant makes a lot in his brief about the way she phrased it is, if I could find a lawyer. I think that a little too much is made of that comment, particularly in light of her ultimate testimony, that she is, quote, certain that she would prevail. I think her certainty in prevailing assumes she could find a lawyer. But the first step is she would find a lawyer. An action would be filed under 548. The trustee explained that in the ordinary course, where nobody is lying about anything, she would look at the schedules to determine, you know, what to plead. But, you know, sometimes she pleads alternatively because she can't really tell. But in any event, she would file a 548 action. It would proceed just like any other civil action. There would be discovery. There would be a pretrial conference. And then they would either settle or the case would go to trial. One of the elements that the trustee would have to prove. There are two different prongs under 548. 548A1A is actual fraud. 548A1B is constructive fraud. Under A, subpart A, the trustee would have to prove intent to hinder, defraud, or delay. And the case law from this court says any one of those is good. You don't have to prove all of them. And if it's delay, it doesn't have to be delay forever. Or if it's you don't have to deprive them of the opportunity to get it forever or intend to. Just to somehow delay. So that would be the first one, subpart A. Under subpart B, constructive fraud, the trustee would have to prove that the debtor who made the transfer, the transfer or, in this case, that they all, was either insolvent at the time the transfer was made or that the transfer caused his insolvency and that it wasn't made for nearly equivalent value. Two completely different prongs. Now, counsel said a few minutes ago that the trustee refused to give any details on what evidence she had or what proof. That's not accurate. The phrase where she says I don't have that case today pertained only to the insolvency prong. And I note this in a footnote to my brief. And that is because they all, in his schedule, failed to give the dates that any of his debts were incurred. So when you look at the schedule itself, which is a preprinted form, when you list your debts, you have to list the date that it was incurred. And if you do that, then on the face of the schedule, you can do the math and figure out when different debts were incurred, and you can figure out, well, was the person insolvent at the time. They all didn't do that. And what the trustee was saying in response to the question, he was pressing it, defense counsel was pressing her, well, how can you tell he was insolvent? And she's like, well, you know, I'd have to look at when these dates were incurred. And, well, tell me, you know, when, how do you know he was insolvent? Well, I don't have that with me today. And I think that's all that she was saying. She was not refusing to specify how she would prove a 548 action, particularly under subpart A, because she did give some examples. For example, she pointed out that a criminal jury under a higher burden of proof, beyond a reasonable doubt, had found intent to defraud. When this case was tried to a criminal jury, 12 people, the jury was specifically instructed that it had to find intent to defraud. And under a higher burden of proof, beyond a reasonable doubt, that criminal jury had found intent to defraud. And the district court, I think, points out, well, you know, it would be the same evidence, right? And, obviously, it would be the same evidence. She would use the same evidence that showed intent to defraud. There are other things the trustee identified in her testimony at the resentencing. And they would basically fall under the category of what I think this Court and other courts call the badges of fraud under 548A1A. The case I found preparing for argument, not cited in my brief, I'll file a 28J letter, is Sosa, in which this Court adopted basically the common law, badges of fraud under 548A1A. There are lots of cases that say. You look at concealment. Obviously, this transfer was not disclosed. There was concealment. Second, you look at the relationship between the transferor and the transferee. And in this case, it is the same person. I mean, we can create a corporate entity. But Thad Thayall transfers the $32,000 from his account into Thad's Rentals. And then some of that money, we don't contend that that money was all blown on nothing. Thad's Thayalls is a rental business. Some of that money was used to pay legitimate expenses. The trustee testified that it didn't make any difference. It's the fact of the transfer and that it doesn't really change hands. It's going from one iteration of Thad Thayall to another iteration of Thad Thayall. He owned all the stock in Thad Rentals. I think it was a community asset that he and his wife owned it as a community. This was a Louisiana marriage, so they had a community property regime, and they owned it together. But it was basically the two of them who operated Thad's Rentals. Some of that money went to benefit him. If you look at the bank statements, about $5,000 of it went to pay off a marker at a casino. That was Thad's personal gambling debt. So that's going to be a badge of fraud. You've got basically that the money looks like it changes hands, but it really doesn't change hands because at the end of the day, Thad Thayall is still the one who is transferring this money. The trustee also discussed in some detail the fact that when you, and let me point out, the relationship between Thad Thayall and Thad's Rentals was not disclosed in the initial bankruptcy schedules. It was not disclosed in the amended, at least the first amended bankruptcy schedule. It came up, the trustee had received some tax returns that showed some income. So at the first creditor's meeting, the first 341 meeting after the bankruptcy petition was filed, she's like, well, you know, how are you making your money? And he says, well, you know, I've got some other interests, including, and he names a couple of things, and he says, I have a rental company. And the trustee said, well, what's this rental company? Well, it's Thad's Rentals. Well, that needs to be in your schedule. That wasn't initially declared in the schedule. You know, that's one of these other things that would go towards, you know, some sort of intent at concealment. If you look at the second creditor's meeting, there was a first creditor's meeting, a second creditor's meeting, and then a 2004 examination, but not the date. It was the section of the bankruptcy code. It was a 2004 examination where the trustee, not knowing about the 32, the 32,000 never comes up in any of these discussions, even though, because the trustee doesn't know, the debtor is lying, he's concealing it, and she's asking him about small transfers, $2,000 back and forth. It's written, it's repaid. It's written, it's repaid. And so he says, well, you know, I kind of do that back and forth. Well, the way that worked was Thad's Rentals paid the debtor. That was the way that usually worked. This time Thad paid Thad's Rentals because this was one occasion when Thad was flush, and he was flush because he had not disclosed the sale of that Ambassador Cafferty property, and that's where that money comes from. So all of this to say that the trustee in the second sentencing hearing gave a lot of detail, gave a lot of information on how she would prove an A1A actual fraud action. And, you know, the best evidence of that is that a jury found actual fraud. The burden shifting, the only thing the district court really, you know, got into a burden shifting issue on was this notion of collectability. All right, so Judge Resenthal, as you pointed out, we've got three steps. We've got to file the action, we've got to get a judgment. She testified unequivocally. I think she used the word certain. I am certain that I could get a judgment. So we file an action, we get a judgment, and then what do we do with it? So that becomes a debated issue at the resentencing. Does the government have to prove collectability? And the trustee says, you know, whether the money's still there, meaning whether Thad's Rentals still had $32,000, wouldn't matter in a bankruptcy court because the judgment is a thing of value. And I can inscribe and, if necessary, keep re-inscribing that judgment until I can collect on it. So the district court, again, sort of makes alternative rulings. One, it's enough to get the judgment. The judgment's a thing of value. The bankruptcy trustee says the judgment is something that she can pursue as long as she can pursue it. But second, even if collectability has to be established, there is evidence in this record. So it's not really a – if it's burden-shifting, I argue in my brief that it's ultimately harmless because the district court doesn't say, well, it's your burden, too bad, you didn't prove it, you lose. The district court says, well, you know, maybe it's your burden, but let's look at evidence that's already in the record. And so the court relies on what was admitted at the resentencing hearing as court's exhibit number one. This is ROA 1165 and a few pages after that. This was a document that the district court – the district court had asked for additional information in connection with sentencing on Thad Fayol's and all of his businesses' financial position. What had happened was, I think through a misunderstanding, Fayol had refused to give that information to the probation officer when the PSR was prepared. And, again, that was just a misunderstanding about the, you know, we're not going to – we don't want to waive any privilege because we're going to appeal. So the district court said, I want that information. So defense counsel prepares a fairly extensive discussion of all of the holdings of Thad, of the Acadiana patio systems, Thad's rentals, all of their different business entities. And that document reflects that at the time the bankruptcy petition was filed, Thad's rentals had assets that would have been available. And I argue in my brief, if you look at bankruptcy law, 7064, 7064 of the Bankruptcy Code says that incorporates by reference Federal Rule of Civil Procedure 64, which in turn incorporates by reference all of the state law mechanisms for attaching property. So, basically, if the trustee had known about this, had been able to file a 748 action, she could have availed herself of all of these sort of attachment provisions under state law and secured these properties, some of which were mortgaged. But, you know, all we need is $32,000. And there's a lot of property that Thad has on the date that his bankruptcy – Thad's rentals has on the date his bankruptcy petition was filed. Judge Davis mentioned the Scheinbaum case. The district court relied on Scheinbaum on the burden-shifting issue that, you know, the district court can allocate under 3664, I think it's E, the burden of proof to the defendant on things that he's going to know better. And that would go to things like whether this property was subject to mortgage, you know, how much equity he would have had in it, whether there was, you know, in Scheinbaum it had to do with an offset, a civil offset. Those kinds of things that the defendant has an incentive to develop to mitigate the amount of restitution and that he would have superior knowledge of. If the members of the Court have no further questions, I'll sit down now. Thank you. Mr. Talbot, back to you. Thank you, Your Honors, and I'll be brief. I don't believe I'll need the full five minutes. First of all, and I tried to make this point in the reply brief, that Mr. Thayil does not contest the third prong, as Judge Rosenthal says, that once a money judgment is granted, we don't contest that there weren't assets or there's not assets today. That's certainly not contesting. We only contest that that money judgment would have never been granted. And counsel for the government does a good job of connecting all the dots in her argument and on brief, dots that were not connected at the district court hearing to actually show. If we can connect them from the record, is that enough? Well, I don't think the record supports quite everything that was connected. What if it does? Well, certainly if the record supports this judgment, then obviously Your Honors will affirm. But I think the record doesn't support, and here's why. Because there's not actual intent to defraud in the record in the February $32,000 transfer. The fact that a jury found that four months later there was defraud, there was actual intent to hide a $15,000 promissory note, because remember, that's what the jury trial is about. The jury trial is about a promissory note that Mr. Thayil possessed when he filed the bankruptcy and did not disclose the possession of that note. That's what the jury trial was about. That's what the closing statements were about. In the entire jury trial, with two days on the stand of the trustee, she made one reference to the $32,000, and that reference was only, it would have been nice to know about that. So the jury was not considering any evidence of intent to defraud in February. They were considering the evidence of what happened in August and September of that year. So I don't think the jury verdict sheds any light on whether Mr. Thayil intended to defraud the $32,000. And if we look at that transfer, then it makes sense, because Mr. Thayil didn't transfer the money to his other company to hide the money, and it still existed when he filed bankruptcy. He didn't sell a car for $1 to his neighbor. He transferred money to his solely owned company, so that way that company could pay late bills and not lose a bunch of rental properties that are all assets. But he didn't disclose that. Well, he didn't disclose that transfer on his bankruptcy petition, but that failure to disclose is not evidence of fraud. We'd have to look at— It's a nice little piece of evidence that kind of shows it. It's certainly something that could be considered. So the fact that he didn't disclose the $32,000, if we go and look at the $32,000 and see that he gave it to his brother-in-law to hold, then that's fraud. Or if he did something with the money that was improper, that's fraud. But instead, the money was spent in a way that he could have just written the checks out of his personal account and it would have been completely fine. The fact that he wrote it out of a business account by transferring the money is the only reason we're here today. It's a pretty big reason, isn't it, not listing it on the schedules and concealing it when asked about it? Right. And his reasoning, when he's questioned by the trustee in the 341 meeting, is that his accountant told him not to pay any business expenses out of his personal account. That's the only reason the money was transferred. So if we look at where the money actually went, it doesn't appear to be any intent to defraud, which is why the trustee was prodded at this hearing. What evidence do you have that he made that transfer in an intent to hide that money because the money wasn't hidden? The money was spent in legitimate expenses. And the trustee didn't have— He wasn't paying any debtors. He wasn't paying any bankruptcy debtors with that. No, he was paying property taxes. That's what it should have been allocated for. He wanted the money to go to Thad's Rentals instead of paying all these bills. And it was to pay bills for Thad's Rentals because, remember, this is before the bankruptcy. So Mr. Thayall is having a fire sale. He's attempting to prevent a bankruptcy from being filed. So he's trying to figure out which debts to pay to keep himself afloat. And in this transfer of money, it wasn't like it went to a preferential creditor. It was just to pay property taxes and to pay utility. Keeping Thad's Rentals afloat. He was gone, but he wanted to keep Thad's Rentals afloat. Exactly. And keeping Thad's Rentals afloat would certainly benefit the creditors in the bankruptcy because Thad's Rentals owns assets, and his stock in Thad's Rentals is an asset that could be a number to the creditors in the bankruptcy. It's a step removed, though. It makes it harder to get to. But still, his stock in Thad's Rentals is an asset that the trustee could take control of all of Thad's Rentals and could sell the properties and send that money to the creditors. So it certainly wasn't the type of fraud that we normally see with avoidance actions where money is clearly hidden, like the $15,000 that was the subject of the original residency. But he clearly hid it from the bankruptcy trustee. He failed to list it. I don't think there's evidence. He failed to, and he lied about the date of the transfer of the building sale, and he took other steps, it appears, to avoid providing the information. And I think the record shows those steps were to conceal the $15,000 promissory note that still existed when the bankruptcy was filed, not this $32,000 transfer. Thank you, Your Honors. Okay. Thank you very much.